UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

REPORT AND RECOMMENDATION

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Nico Redding,

Plaintiff,

vs.

Jan Hanlon; Ms. Karow;
Sgt. Schleis; Vicky Polmann;
Captain Klatt; L. Summers;
Officer Peine; Mr. Stender;
Ms. Connie Roewick; Mr.
Reiser; Ms. J. Carter; Ms.
Hlatti; Ms. Bernadette Nicholson;
Lt. McColley; Lt. Sheila McShae;
Officer Opsaul; Officer Knott;
Officer Carol McHugho; Officer
Cervanek; Sgt. Worrison;
Officer Lewin; Lt. McShae; Ms.
Sandy Rost; Nanette Larson;
John Agrimson; Ms. Lynn Noll;
Ms. Conel; Sgt. Dunras; Lt. Mikel;
Officer Washington; Officer Cindy
Mosco; Darin Haugland; Officer
Rosemary Andrews; Officer Al
Jones III; Officer T. Ryan; Officer
Kruger; Keith Krueger; Mr. C.
Johnson; Ms. Phyllis Lawver;
Ms. Joanne Paulson; Mr. Ralph
Flesher; Sgt. Zime; Sgt. Gardner;

Officer Liebel; Lt. Yozamp; G.
Kindall; Officer Bob Coolidge;
Officer D Pierce; Officer R.
Peterson; Sgt. Mielke; Warden
John King; Officer Lanierd; Sgt.
Jan Obrien; Officer Brewer;
Officer Hangman Vandeburg;
Sgt. Rikken; Officer M. Fox;
Officer Tolbert; Ms. Loraine
Shultz; Officer David Lang;
Captain Wilmes; Officer Sandy
Olene; Ammy Langsworthy;
Carrie Anderson; Ms. Sue
Nelson; Officer Melany Parsons
 Mr. Dale Poliak; Health Services
Department of Faribault; Doctor
Craane; Regional Director of C.M.S.;
Doctor Salmi; C.M.S.; Health
Services, Lino Lakes; Health
Services, Rush City; Nanette
Larson; and John A. Agrimson,

                              Defendants.        Civ. No. 06-4575 (DWF/RLE)

       *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motions of some of the Defendants to Dismiss.  For

these purposes, the Plaintiff Nico Redding ("Redding") appears pro se; the Defendants

Correctional Medical Services ("CMS"), Dr. Stephen Craane ("Dr. Craane"), Phyllis Lawver ("Lawver"), and Dr. Gregory Salmi ("Dr. Salmi") (collectively, the "CMS Defendants"), appear by Mark W. Hardy, Esq.; and the Defendants Kari Anderson ("Anderson"), Officer Trevor Brewer ("Brewer"), Robert Coolidge ("Coolidge"), Michael Fox ("Fox"), Sgt. Gardner ("Gardner"), Charles Johnson ("Johnson"), Al Jones III ("Jones"), Officer Lynn Knott ("Knott"), Officer James Lanerd ("Lanerd"), Officer Patricia Liebel-Beiring ("Liebel-Beiring"), Officer Carol Mielke ("Mielke"), Sue Nelson ("Nelson"), Officer Jan O'Brien ("O'Brien"), Officer Walt Opsahl ("Opsahl"), Melanie Parsons ("Parsons"), Ronald Peterson ("Peterson"), Deborah Pierce ("Pierce"), Vicky Pohlmann ("Pohlmann"), Sgt. Jay Ryken ("Ryken"), Officer T. Ryan ("Ryan"), Sgt. Joe Schleis ("Schleis"), Loree Sommers ("Sommers"), Officer Washington ("Washington"), and Lt. Scott Yozamp ("Yozamp")(collectively, the "State Defendants"), appear by Margaret E. Jacot, Assistant Attorney General for the State of Minnesota.[1]

---

[1] There are several Defendants, including Lanerd, Liebel-Beiring, Opsahl, Pohlmann, Ryken, and Sommers, whose names are spelled differently than contained in the caption of this case. We have corrected the spellings, where appropriate, in order to reflect the true name of the referenced Defendants.

For reasons which follow, we recommend that the CMS Defendants' Motion to Dismiss be granted, and that the State Defendants' Motion to Dismiss be granted in part.

## II. <u>Factual and Procedural History</u>

Redding is a prisoner of the State of Minnesota, and is currently incarcerated at the Minnesota Correctional Facility, in Faribault, Minnesota ("MCF-FB"). In his twenty (20) years of incarceration, Redding has also been housed at the Minnesota Correctional Facility, in Rush City, Minnesota ("MCF-RC"), and at the Minnesota Correctional Facility, in Lino Lakes, Minnesota ("MCF-LL"). On November 21, 2006, he commenced this action under Title 42 U.S.C. §1983, alleging, in part, violations of his rights under the Eighth and Fourteenth Amendments, for deliberate indifference to his medical needs. He also contends that he has been subjected to sexual harassment, in violation of the Eighth Amendment, and that he was denied an extra footlocker, in violation of his right to equal protection under the law. See, <u>Complaint, Docket No. 1</u>. The CMS Defendants all provide health services to offenders who are incarcerated in Minnesota Correctional Facilities, pursuant to a contract with the Minnesota Department of Corrections (the "DOC"). The State Defendants are all employees of the DOC, who work in some capacity at MCF-FB,

MCF-RC, or MCF-LL, and who have encountered Redding during his incarceration at those Institutions.

On May 25, 2007, the CMS Defendants filed their joint Motion to Dismiss, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure, for insufficient service of process. See, <u>Docket No. 30</u>. On the same date, the State Defendants filed their joint Motion to Dismiss, pursuant to Rule 12(b)(5), for insufficient service of process, and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim. See, <u>Docket No. 36</u>.[2]

As to the facts which underlie Redding's claims, Redding first alleges that, while incarcerated at MCF-RC, between January 8, 2002, and August 26, 2002, he was repeatedly denied a single cell, despite a medical authorization. See, <u>Complaint,</u>

---

[2]Redding's Complaint is more than one hundred (100) pages long, and names more than seventy (70) Defendants who, he asserts, have acted in an unlawful manner over a period spanning approximately five (5) years. Accordingly, in the interest of focusing our analysis on the pertinent events, we have limited our recitation of the facts to Redding's allegations against the State Defendants who seek dismissal under Rule 12(b)(6), Federal Rules of Civil Procedure, because -- they contend -- Redding has failed to state a claim against them. With respect to the CMS Defendants, and the other State Defendants, who seek dismissal under Rule 12(b)(5), solely because they contend that Redding has failed to effect service of process, we need not summarize the allegations of Redding's expansive Complaint. In addition, we have not summarized any of his allegations against the other Defendants, as they have not, as yet, filed any Motions for our consideration.

supra at ¶¶136-37, 143.  Redding states that he has medical conditions which require near-constant access to a toilet, and which, therefore, disturb the sleep of his cellmates.  Id. at ¶137, 145.  He also contends that his arthritis pain disrupts his sleep, which further disturbs the sleep of his cellmates.  Id. at ¶138.

Redding alleges that the State Defendants -- Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp -- have forced him to move from single cells to double cells, on at least five (5) occasions, in violation of his medical authorization.  Id. at ¶¶138-39, 141.  Redding also alleges that he informed those Defendants of his medical authorization, but that they claimed that the medical authorization had been rescinded.  Id. at ¶¶139, 148-49.  Redding contends that his medical authorization was never rescinded.  Id. at ¶¶140, 147.  In the alternative, he contends that a nurse, who did not have the authority to rescind his medical authorization, forged the rescission.  Id. at ¶141.

Redding also alleges that Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp, ordered him to pack his property, during those moves, even though his doctor had issued a lifting restriction, based on his medical condition.  Id. at ¶141.  Accordingly, Redding alleges that those Defendants acted with deliberate indifference to his medical conditions, in violation of the Eighth Amendment.  Id. at ¶¶141-42.

Next, Redding alleges that, on January 3, 2003, he was required to mop the kitchen, as part of his job assignment. <u>Id.</u> at ¶¶150, 153. Redding contends that his medical impairments, including his use of a cane, made such a task both painful and difficult. <u>Id.</u> at ¶¶153, 155. Redding claims that, while he was attempting to mop the floor, he slipped and fell, bumping his head on the concrete floor. <u>Id.</u> at ¶157. According to Redding, the State Defendants -- Brewer, Fox, and Ryken -- were present when he fell, but did not move to help him. <u>Id.</u> at ¶159. He does not contend that those Defendants ordered him to mop the floor.[3] <u>Id.</u> at ¶153. Redding further states that several other inmates helped him to his feet within fifteen (15) to twenty (20) seconds. <u>Id.</u> at ¶157. He also states that another officer wrote him a pass to visit Health Services after he fell, and a second officer escorted him to Health Services. <u>Id.</u> at ¶¶157-58. Redding contends that he suffered "mental anguish and dehumanization" due to the behavior of Brewer, Fox, and Ryken, <u>id.</u> at ¶158, and he further alleges that their failure to assist him amounted to a deliberate indifference to his medical conditions. <u>Id.</u> at ¶¶339, 341.

---

[3]Rather, Redding alleges that Paulson ordered him to mop the floor. See, <u>Complaint</u>, <u>Docket No. 1</u>, at ¶153.

Redding next alleges that on three (3) occasions, in 2003, he was sexually harassed by Jones.[4]  Id. at ¶123.  Redding alleges that, on May 23, 2003, Jones came to his cell, and accused Redding of trying to sexually assault his cellmate.  Id. at ¶¶124-26.  According to Redding, both he and his cellmate denied that accusation. Id. at ¶126.  Later that week, when Redding and his roommate were in the day room with other inmates, Redding alleges that Jones said, to his cellmate, "Hey Larry you are acting so calm and submissive and so docile[,] what happened in the cell last

---

[4]In his Complaint, Redding refers to "[o]ther incidents showing a pattern of misconduct/harrassment [sic] and abuse of power" as "shown in affidavit on Officer Al Jones para.a [sic] 19."  See, Complaint, Docket No. 1, at ¶134.  This Affidavit is Redding's Exhibit 10.  See, Docket No. 63.  We could consider the Exhibit as a document which is necessarily embraced by the pleadings.  See, Rule 12(b), Federal Rules of Civil Procedure (A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." ); Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).  However, we find no reason to cite to Exhibit 10, since our review of the document reveals that all of the allegations, which appear in that Exhibit, and which relate to Jones' alleged sexual harassment of Redding, are also contained in Redding's Complaint, and in nearly identical language.  Moreover, the paragraph of the Affidavit which Redding references in his Complaint -- paragraph 19 -- only alleges that Jones harassed another prisoner, and has no relevance to Redding's allegations that Jones sexually harassed him.  See, Docket No. 63, Exhibit 10, at ¶19.

night[?]" Id. at ¶128.  Redding alleges that Jones, his cellmate, and the other inmates,

laughed.  Id.

Redding alleges that a few days later, on June 4, 2003, he was walking with his

cane, and limping, and Jones asked him why he was walking "so funny."  Id. at ¶129.

Jones then said, "[I] believe someone has been running up inside you for sex[.]"  Id.

Redding claims that Jones then moved toward him, but he told Jones "not to put his

hands on me, and that he was unprofessional and perverted and pre-occupied with

homosexual thoughts[.]"  Id.

In another incident, Redding alleges that he twisted his wrist, and injured his

hip and back, when his cane had slipped on the floor.  Id. at ¶132.  Redding asked

Jones if he could go to Health Services, in order to get a new rubber tip for his cane.

Id.  Redding asserts that Jones refused to let him go to Health Services, and then said,

"I got another kind of rubber tip for you[,] a tickler tip for you," which Redding

understood to refer to a "propthalactic [sic] rubber made for sexual intercourse."  Id.

at ¶133.  Accordingly, Redding alleges that Jones sexually harassed him, in violation

of his constitutional rights under the Eighth and Fourteenth Amendments, and in

violation of the Minnesota Human Rights Act (the "MHRA"), Minnesota Statutes

Sections 363A.01 et seq.  Id. at ¶¶123, 332.

With respect to his next claim, Redding alleges that, on July 20, 2004, he informed Johnson that his foot supports were broken.  <u>Id.</u> at ¶114.  Redding contends that Johnson knew that Redding suffered from pain in his feet, back, and ankles, which required the use of these foot supports.  <u>Id.</u>  In response, Johnson allegedly told Redding that he would have to wait for his next-scheduled doctor's appointment, in approximately two (2) months.  <u>Id.</u> at ¶115.  Redding alleges that Johnson's lack of response amounted to deliberate indifference, insofar as it unnecessarily delayed Redding's treatment, and caused him pain.  <u>Id.</u> at ¶¶116, 383.

Next, Redding alleges that, on April 8, 2005, an officer falsely reported that he was fighting with his cellmate.  <u>Id.</u> at ¶292.  Redding contends that he was wrongly placed in segregation, based on the false report.  <u>Id.</u> at ¶¶293-94.  Redding also alleges that Knott, Opsahl, and Pohlmann, came to his cell, in response to the false report.  <u>Id.</u> at ¶¶227, 295.  Redding alleges that Knott, Opsahl, and Pohlmann, confiscated his personal property, including his cane, dentures, and urinal, in accordance with DOC policy, because he was moved to a segregation cell.  <u>Id.</u> at ¶¶224, 227, 301.  Redding alleges that his cane, dentures, and urinal, were prescribed medical accommodations, and that they were not returned to him until April 20, 2005, which was a few days

after his release from segregation.[5]  Id. at ¶¶220, 223, 229-230.  As a result, Redding alleges that he was denied his prescribed medical treatment, in violation of the Eighth Amendment.  Id. at ¶228.

On April 9, 2005, Redding sent a kite to Schleis, and requested a third footlocker, for the storage of his legal materials.  Id. at ¶¶321-22.  Schleis denied Redding's request, and told him that he would only be allowed to keep two (2) footlockers.  Id. at ¶321.  Redding alleges that Schleis thereby violated his equal protection rights because, he alleges, that other similarly situated inmates were permitted a third footlocker, in order to store their legal materials.[6]  Id. at ¶¶322, 324.

Redding also alleges that Schleis was deliberately indifferent to his medical condition, when he refused to give Redding his prescribed cane, dentures, and urinals.

---

[5]Redding maintains that he was not permitted to keep his cane, while in segregation, because the Health Services supervisor wrongly advised that his medical authorization had expired, or alternatively, wrongly refused to renew his authorization.  See, Complaint, supra at ¶¶221, 226.  Redding contends that a nurse in his housing unit also wrongly refused to provide him with his dentures and a urinal.  Id. at ¶230.

[6]Although Redding alleges that his canteen items were confiscated, because they did not fit in his two (2) allotted footlockers, he does not identify who was responsible for throwing out those items.  See, Complaint, Docket No. 1, at ¶428.  As a consequence, Redding does not allege that Schleis was responsible for the loss of his canteen items, and so we are unable to discern any claim for deprivation of property against Schleis.

Id. at ¶¶320, 323.   Redding contends that Schleis saw Redding's urinals in his footlockers, and therefore, should have known that Redding was medically authorized to have them.  Id.  Redding states that he requested his prescribed medical equipment, both while he was in segregation, and upon his release, but Schleis refused to send them to him.  Id. at ¶¶320, 322.

### III.  Discussion

As previously noted, and against the Defendants at issue here, Redding alleges various constitutional claims, pursuant to the Eighth and Fourteenth Amendments. He also alleges a claim of sexual harassment, in violation of the MHRA.  Redding seeks declaratory relief, as well as compensatory and punitive damages.   See, Complaint, supra.

The CMS Defendants move to dismiss Redding's claims as against them, but without prejudice, for insufficient service of process.  See, Rules 4(e), (h), 12(b)(5), Federal Rules of Civil Procedure.  Several of the Defendants -- namely, Gardner, Nelson, O'Brien, Parsons, Ryan and Washington -- also seek dismissal of Redding's claims, based on insufficient service of process.  Id.  Certain other Defendants -- namely, Anderson, Brewer, Coolidge, Fox, Gardner, Johnson, Jones, Knott, Lanerd, Liebel-Beiring, Mielke, Opsahl, Parsons, Peterson, Pierce, Pohlmann, Ryken, Schleis,

Sommers, and Yozamp -- seek dismissal because, they contend, Redding has failed to state a legal claim against them.   See, Rule 12(b)(6), Federal Rules of Civil Procedure.  In turn, Redding has filed a Memorandum in opposition to those Motions.[7] See, Plaintiff's Memorandum in Opposition, Docket No. 42.

We address each claim in turn.

A.   The CMS Defendants' Motion to Dismiss.

1.   Standard of Review.  The CMS Defendants' Motion to Dismiss is predicated on their assertion that Redding failed to effect sufficient service of process. See, Rule 12(b)(5), Federal Rules of Civil Procedure.  Proper service of process is necessary because, "[i]f a defendant is improperly served, a federal court lacks jurisdiction over the defendant."  Printed Media Services, Inc. v. Solna Web, Inc., 11 F.3d 838, 843 (8th Cir. 1993), citing Dodco, Inc. v. American Bonding Co., 7 F.3d 1387, 1388 (8th Cir. 1993); see, Murphy Bros., Inc. v. Michetti Pipe Stringing, 526

---

[7]Redding has also submitted other materials, including an Affidavit, and Exhibits.  See, Docket Nos. 57, 63, 66.  In addition, after several of the Defendants filed Answers, see, Docket Nos. 26, 28, Redding submitted a Memorandum, apparently in opposition to those Answers.  See, Docket No. 29.  His Memorandum appears to be identical to the Memorandum that Redding submitted in opposition to the current Motions to Dismiss.  See, Docket No. 42.  As we explain in the text of this Opinion, we consider only the allegations contained in Redding's Complaint, for purposes of the Motions to Dismiss.

U.S. 344, 350 (1999); <u>Sieg v. Karnes</u>, 693 F.2d 803, 807 (8th Cir. 1982); <u>Personalized</u> <u>Brokerage Services, LLC v. Lucius</u>, 2006 WL 2975308 at *1 (D. Minn., October 16, 2006).

Service of process can be effected upon individuals, under the Federal Rules, "pursuant to the law of the State in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." <u>Rule 4(e)(1), Federal Rules of Civil Procedure</u>. In turn, under Minnesota law, "a plaintiff may effectively serve a summons and complaint by two methods: personally under Minn. R. Civ. P. 4.03 or acknowledgment by mail under Minn. R. Civ. P. 4.05." <u>Turek v. ASP of Moorhead, Inc.</u>, 618 N.W.2d 609, 611 (Minn.App. 2000), rev. denied (Minn., January 26, 2001).

With respect to service of process upon corporations, such as CMS, Rule 4(h), Federal Rules of Civil Procedure, provides, in pertinent part, that a domestic corporation may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual[.]" Accordingly, under Minnesota law, "[s]ervice on a corporation is accomplished by delivering a copy of the complaint to an officer, managing agent, or any other agent expressly or impliedly designated to receive service." <u>Alholm v.</u>

- 14 -

American Steamship Co., 144 F.3d 1172, 1176 (8th Cir. 1998), citing Rule 4.03(c), Minnesota Rules of Civil Procedure. The requirements for serving a corporation under Minnesota law are "materially identical" to the alternative provision of Rule 4(h), Federal Rules of Civil Procedure, which also allows service upon an officer, a managing or general agent, or other authorized agent. Id. at 1176 n. 3.

However, "[s]ervice of process in a manner not authorized by the rule is ineffective service." Id., quoting Lundgren v. Green, 592 N.W.2d 888, 890 (Minn. App. 1999), rev. denied (Minn., July 28, 1999), quoting in turn, Tullis v. Federated Mutual Ins. Co., 570 N.W.2d 309, 311 (Minn. 1997). In addition, the plaintiff "has the ultimate burden [of] establishing the validity of service of process." A.C. ex rel. M.C. v. Ind. School Dist. No. 152, 2006 WL 3227768 at *4 n. 4 (D. Minn., November 7, 2006), citing Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1387 (8th Cir. 1995). A Court may dismiss an action without prejudice if service is not made "within 120 days after the filing of the complaint." Rule 4(m), Federal Rules of Civil Procedure.

"Whether [the defendant] has actual notice of the lawsuit and [the plaintiff] substantially complied with the rules for service of process is irrelevant, because the actual notice exception applies only to cases involving substitute services at a

defendant's usual place of abode." Turek v. ASP of Moorhead, Inc., supra at 612, citing Thiele v. Stich, 425 N.W.2d 580, 584 (Minn. 1988); Ryan Contracting, Inc. v. JAG Investments, Inc., 634 N.W.2d 176, 182 (Minn. 2001), citing Tullis v. Federated Mut. Ins. Co., supra at 311; Coons v. St. Paul Cos., 486 N.W.2d 771, 775 (Minn. App. 1992).

       2.   Legal Analysis.  Here, the CMS Defendants seek dismissal of Redding's claims against them, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure, for failure to effect service of process.  Redding instructed the United States Marshal Service to serve Craane, Lawver, and Salmi, at the DOC Central Office, in St. Paul, Minnesota.  See, Docket No. 19, at 16, 23, 24.  Janel Frank ("Frank"), an employee at DOC's Central Office, accepted the Summons and Complaint for Craane, Salmi, and Lawver.  Id.; see also, CMS Defendants' Memorandum in Support, Docket No. 31, at 1.  Redding subsequently filed the executed Summons for those three (3) Defendants.

In addition, Redding directed the United States Marshal Service to serve Lawver at MCF-RC.  See, Docket No. 20, at 2.  His Summons to Lawver, at MCF-RC, was returned unexecuted, with the notation, "4/10/07 Defendant is retired."  Id.  Last, Redding completed a Service form for CMS, which he addressed simply to

"Correctional Medical Services," with no street address, nor any city and State designation. Id. at 9. Instead, Redding wrote, "Prison staff will not provide address[;] neither will case workers," and "Wardens Roerhrich and Stender know the address." Id. The Summons for CMS was returned to Redding, but unexecuted. Id.

In an Affidavit in support of the CMS Defendants' Motion, Dale Poliak ("Poliak"), who is the regional manager of CMS, attests that Craane, Salmi, and Lawver, have not been employed by the DOC, at any time relevant to this lawsuit.[8] See, Affidavit of Dale Poliak ("Poliak Aff."), Docket No. 32, at ¶¶5-7; see also, CMS Defendants' Memorandum in Support, supra at 2.   Poliak further avers that neither Frank, nor anyone else at the DOC, was authorized to accept service of process on behalf of Craane, Salmi, Lawver, or any other employee or contractor of CMS. Id. at ¶3; CMS Defendants' Memorandum in Support, supra at 2.  CMS, for its part, simply contends that no Summons was ever served upon its officers, managers, or any other authorized agent, as is evident by the unexecuted Summons which appears in the case

_____

[8]Instead, the CMS Defendants assert that Craane and Salmi are physicians, who independently contract with CMS to provide medical care to inmates, pursuant to CMS's contract with the DOC.  See, Affidavit of Dale Poliak ("Poliak Aff."), Docket No. 32, at ¶¶1, 5-6.  Lawver is a certified nurse practitioner who is employed by CMS. Id. at ¶7.  Indeed, in Redding's responsive Memorandum, he acknowledges that CMS staff members are "not part of The Department of Corrections."  See, Plaintiff's Memorandum in Opposition, Docket No. 42, at p. 10B, ¶3.

docket.  See, <u>CMS Defendants' Memorandum in Support</u>, supra at 3; <u>Docket No. 20</u>, at 9.

The Record reflects that Redding has been on notice, since May 25, 2007, of the CMS Defendants' contention, that they had not been effectively served.  See, <u>CMS Defendants' Motion to Dismiss</u>, <u>Docket No. 30</u>.  Redding has not responded to the CMS Defendants' argument, with respect to insufficient service of process, and the Record reveals no other attempt to serve the CMS Defendants, by mail or in person.

We are mindful that, as a <u>pro</u> <u>se</u> litigant, Redding is entitled to certain leniencies in the prosecution of his case.  However, while <u>pro</u> <u>se</u> pleadings are to be construed liberally, we cannot ignore the requirement that a plaintiff effect proper service of process on a defendant.  See, <u>Hinz v. Washington Mutual Home Loans</u>, 2004 WL 729239 at *2 (D. Minn., April 2, 2004).  In <u>Hinz</u>, the Court addressed a <u>pro</u> <u>se</u> litigant's failure to serve process in accordance with the Federal Rules, observing as follows:

> The Court recognizes that the [plaintiffs] are proceeding <u>pro</u> <u>se</u> in this matter, and may therefore not fully appreciate the procedural requirements of bringing a lawsuit in federal court.  However, the Court is obligated to uphold the rights and protections afforded Defendants when those Defendants are brought before this Court.

<u>Id.</u>

- 18 -

Accordingly, Redding's status as a <u>pro</u> <u>se</u> litigant, along with his good faith attempt to comply with the Rules, will not excuse him from adhering to the procedural requirements for service of process. Here, Poliak avers, without contradiction, that Frank was not authorized to accept service on behalf of any of the CMS Defendants. Redding makes no assertion, in his Complaint or in his responsive Memorandum, to the contrary, and therefore, has not competently controverted Poliak's contentions. Nor has Redding made any claim that CMS was, in fact, served.

Indeed, on June 1, 2007, Redding filed a Motion for Discovery of Names of Successors of Defendants, from Defendant Connie Roehrich ("Roehrich"), see, <u>Docket No. 44</u>, and a Motion for Substitution of Parties. See, <u>Docket No. 45</u>. In his Motions, Redding asked the Court to substitute, as named parties, the successors of Craane, Salmi, Lawver, and CMS, among others, and asked the Court to instruct Roehrich, who is the Warden of MCF-FB, to provide the names of those successors so that they might be served.[9] Accordingly, Redding has been well aware of the CMS Defendants' contention, that he failed to effect service of process, for some time.

---

[9]On June 13, 2007, we denied Redding's Motions, without prejudice, and instructed him to meet and confer with the Defendants. See, <u>Order</u>, <u>Docket No. 48</u>.

Nor can we overlook any deficiencies in Redding's service of process, simply because the CMS Defendants had actual notice of the lawsuit. Notably, under both State, and Federal law, "actual notice" does not discharge the plaintiff of his duty to effect proper service. See, <u>Sieg v. Karnes</u>, supra at 807 (finding that Federal Court lacked personal jurisdiction over improperly served defendant despite actual notice); <u>Willis v. Tarasen</u>, 2005 WL 1705839 at * 2 (D. Minn., July 11, 2005)(same); <u>Turek v. ASP of Moorhead, Inc.</u>, supra at 612; <u>Coons v. St. Paul Cos.</u>, supra at 775.

Lastly, while an objection to service of process may be waived, if not raised at the first available opportunity, see, <u>Rule 12(h)</u>, <u>Federal Rules of Civil Procedure</u>, the CMS Defendants have challenged the effectiveness of Redding's service of process, in their Motion to Dismiss, as subsequently documented in their Memorandum in Support of that Motion, see, <u>Docket No. 31</u>. Having found that Redding has failed to effectuate service of process, under the applicable Rules of Federal and State Civil Procedure, we find that we are without personal jurisdiction over the CMS Defendants. Accordingly, we recommend that all claims against the Defendants CMS, Craane, Salmi, and Lawver, be dismissed, but without prejudice.

B.    <u>The State Defendants' Motion to Dismiss</u>.

- 20 -

1.  <u>Redding's Failure to Effect Service of Process</u>.  Gardner, Nelson, O'Brien, Parsons, Ryan, and Washington, also move to dismiss Redding's Complaint, as against them, for insufficient service of process, pursuant to Rule 12(b)(5), Federal Rules of Civil Procedure.  See, <u>State Defendants' Motion to Dismiss</u>, <u>Docket No. 36</u>; <u>State Defendants' Memorandum in Support</u>, <u>Docket No. 37</u>, at 5.  As to those Defendants, Redding instructed the United States Marshal Service to serve Gardner, Nelson, O'Brien, and Parsons, at MCF-RC, and to serve Ryan and Washington at MCF-LL.  See, <u>Docket No. 20</u>, at 1, 3-6, 8.  The Summonses were returned unexecuted, and each included the following notation: "4/10/07 Defendant is retired." <u>Id.</u>  Accordingly, those Defendants maintain that Redding failed to effect service of process upon them in a timely manner, and they seek dismissal of his claims against them.[10]  See, <u>State Defendants' Memorandum in Support</u>, supra at 5.

---

[10]Redding also instructed the United States Marshal Service to serve the Defendant Joanne Paulson ("Paulson") at MCF-RC.  See, <u>Docket No. 20</u>, at 7.  The Summons for Paulson was returned unexecuted, and also stated, "4/10/07 Defendant is retired." <u>Id.</u>  Accordingly, the Record contains no evidence that Paulson has been effectively served within one hundred and twenty (120) days, as required by Rule 4(m), Federal Rules of Civil Procedure.  Because Redding has failed to show any good cause for his failure to serve Paulson, we recommend that this action be dismissed, as against Paulson, for failure to effect proper service, and for failure of prosecution.

Again we note that Redding has been on notice, since May 25, 2007, of the State Defendants' position, that he had not effectively served Gardner, Nelson, O'Brien, Parsons, Ryan, and Washington.[11]   See, <u>State Defendants' Motion to Dismiss</u>, supra.  Redding has not responded to the State Defendants' argument, with respect to insufficient service of process, and the Record reveals no other attempt to serve those Defendants, by mail or in person, either at their personal residences or elsewhere.

Accordingly, in view of an insufficiency of service of process, we recommend that Redding's claims against Gardner, Nelson, O'Brien, Parsons, Ryan, and Washington, be dismissed, but without prejudice.

2.    <u>Redding's Claim for Damages</u>.  Next, we briefly address the State Defendants' contention, that they cannot be sued for damages in their official capacities.  See, <u>State Defendants' Memorandum in Support</u>, <u>Docket No. 37</u>, at 6.  In

---

[11]Likewise, in his Motion for Discovery of Names of Successors of Defendants, from Roehrich, see, <u>Docket No. 44</u>, and his Motion for Substitution of Parties, see, <u>Docket No. 45</u>, Redding asked the Court to substitute, as named parties, the successors of Gardner, Nelson, O'Brien, Parsons, Ryan, and Washington, and asked the Court to instruct Roehrich to provide the names of those successors so that they might be served.  Accordingly, we conclude that Redding has been well aware of the those Defendants' contentions, that he failed to effect service of process, for some period of time.

an action under Title 42 U.S.C. Section 1983, a public servant may be sued in an official, or in an individual capacity, or both.  See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  A suit against a public employee in that person's official capacity is merely a suit against the public employer.  Id., citing Kentucky v. Graham, 473 U.S. 159, 165 (1985).  The Eleventh Amendment protects the State, and the arms of the State, from liability for monetary damages in a Section 1983 action. See, Hadley v. North Arkansas Community Technical College, 76 F.3d 1437, 1438 (8th Cir. 1996), cert. denied, 519 U.S. 1148 (1997)(stating that a State Agency or its officials may invoke Eleventh Amendment immunity, if the practical result of a suit would result in Judgment against the State itself).  Such immunity also extends to State officials who are named as individual defendants acting in their official capacity. Id.  When the action is against the office and not the person, there is no difference from a suit against the State itself.  See, Hafer v. Melo, 502 U.S. 21, 25-26 (1991); Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989).

All of the facilities that are named in Redding's Complaint -- MCF-FB, MCF-RC, and MCF-LL -- are operated under the auspices of the DOC, which is a subdivision of the State of Minnesota.  The State Defendants are all employees of the DOC, and therefore, are entitled to Eleventh Amendment immunity because they are

officials employed by the State.   See, <u>Hadley v. North Arkansas Community Technical College</u>, supra at 1438.   Redding does not allege any waiver of Eleventh Amendment immunity by any of the State Defendants, and a review of the Record does not disclose any such waiver by the State.   See, <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 800 (8th Cir. 2002)("To waive sovereign immunity, a state must make a clear, unequivocal statement that it wishes to do so.").   Therefore, we find that Redding's claims against the State Defendants are barred by the Eleventh Amendment, to the extent that Redding seeks monetary damages for any actions taken in an official capacity.

3.     Redding's Failure to State a Claim.

a)     Standard of Review.   "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).   In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party -- here, Redding.  Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998), cert. denied, 525 U.S. 921 (1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants

the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Dep't of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Redding has submitted numerous materials in opposition to the State Defendants' Motion. However, because our decision rests entirely upon the

pleadings, we analyze the State Defendants' Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56.[12]

> b) The State Defendants Coolidge, Gardner, Liebel-Beiring, Peterson, Pierce, and Sommers.

> 1) Standard of Review. In order to sustain a claim under

Section 1983, a plaintiff must show that the named defendants were directly, and personally involved in the illegal acts, or in the policy decision which created the unlawful context for those acts. See, e.g., Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1 (8th Cir., April 27, 2000); Martin v. Sergeant, 780 F.2d 1334, 1337 (8th Cir. 1985). Accordingly, the doctrine of respondeat superior is not available to a Section 1983 plaintiff. See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988).

---

[12]Redding appears to have intended that his responsive Memorandum would supplement, rather than supersede, his original Complaint. See, Plaintiff's Letter, Docket No. 49; Plaintiff's Memorandum in Opposition, Docket No. 42. Although that practice is not permissible under the Local Rules of this District, see Local Rule 15.1, we have afforded Redding the benefit of a liberal construction, and have considered all of the allegations in **both** his original Complaint, and in his responsive Memorandum.

Moreover, a warden's, or other official's, "'general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995); see also, Brisco-Wade v. Carnahan, 149 F. Supp.2d 891, 899 (E.D. Mo. 2001); Krein v. Norris, 2001 WL 33406651 at * 3 (E.D. Ark., May 19, 2000).  Absent a showing of direct and personal involvement, the only other basis, upon which a plaintiff may state a claim against a defendant, is by demonstrating that the particular defendant failed to properly train, supervise, or control the actions of a subordinate, who invaded the plaintiff's rights.  See, City of Canton v. Harris, 489 U.S. 378, 388 (1989); Ruge v. City of Bellevue, 892 F.2d 738, 739-40 (8th Cir. 1989); Crooks v. Nix, 872 F.2d 800, 804 (8th Cir. 1989).

2)   Legal Analysis.  We agree with the State Defendants, that Redding has not alleged that Coolidge, Gardner, Liebel-Beiring, Peterson, Pierce, or Sommers, were personally involved in any alleged violation of his constitutional rights.  Indeed, Redding makes no mention of those Defendants in his Complaint, other than in the caption, nor does he make any mention of them in his responsive Memorandum.

Given the absence of any showing that those Defendants were personally and directly involved in any constitutional wrong that Redding seeks to vindicate, and given the absence of any allegations which would demonstrate that those Defendants were involved in any policy decision, or that they failed to properly train or supervise any of the other Defendants, we find that Redding's claims against Coolidge, Gardner, Liebel-Beiring, Peterson, Pierce, and Sommers, necessarily fail.   Therefore, we recommend that the State Defendants' Motion to Dismiss be granted, insofar as Redding asserts claims against those Defendants.

c)      Redding's Medical Care Claims.

Redding alleges that several State Defendants were deliberately indifferent to his medical needs, in various ways, and in violation of the Eighth Amendment.  Although the claims arise out of several different incidents, we address all of his medical care claims in this section of our Report and Recommendation.

1)      Standard of Review. It is well-established that deliberate indifference to a prisoner's serious medical needs is prohibited by the Eighth Amendment.  See, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Albertson v. Norris, 458 F.3d 762, 765 (8th Cir. 2005).  "A prisoner's Eighth Amendment rights

are violated if prison officials show 'deliberate indifference' to the prisoner's 'serious medical needs.'" Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003), quoting Estelle v. Gamble, supra at 106. To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005); Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003); Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." Dulaney v. Carnahan, supra, citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

"Deliberate indifference may be manifested by prison doctors in responding to the prisoner's needs or by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002). However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with

treatment decisions does not rise to the level of a constitutional violation." Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000), quoting Estate of Rosenburg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); see also, Smith v. Clarke, 458 F.3d 720, 724 (8th Cir. 2006); Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulany v. Carnahan, supra at 1239; DeGidio v. Pung, 920 F.2d 525, 532 (8th Cir. 1990)("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

Our initial inquiry focuses on whether Redding suffered from an objectively serious medical need, and whether the State Defendants knew about that need, but deliberately disregarded it. See, Jolly v. Knudsen, supra at 1096. "To constitute an objectively serious medical need or deprivation of that need * * * the need or deprivation alleged must either be obvious to the layperson or supported by medical evidence, like a physician's diagnosis." See, Grayson v. Ross, 454 F.3d 802, 809 (8th Cir. 2006), citing Aswegen v. Henry, 49 F.3d 461, 464 (8th Cir. 1995); Vaughn v. Greene County, 438 F.3d 845, 851 (8th Cir. 2005); Pool v. Sebastian County, Arkansas, 418 F.3d 934, 944 (8th Cir. 2005).

Here, Redding alleges that he suffers from degenerative bone disease, and arthritis, as well as a permanent injury to his right foot, which requires a cane and other accommodations.  See, Complaint, supra at ¶¶1-2.  He contends that those physical impairments restrict his ability to walk, stand, bend, kneel, or climb stairs. Id. at ¶1.  In addition, Redding alleges that he suffers from prostate problems, which cause him difficulty with his bowel movements, and urination.  Id. at ¶¶1-2.

At this stage, we conclude that Redding has satisfactorily pled an objectively serious medical need, particularly given the symptoms he describes, and his allegation that he requires the use of a cane, and other accommodations, which would be apparent to an observer.[13]  See, Ellis v. Butler, 890 F.2d 1001, 1003 (8th Cir. 1989)("Because it is difficult to assess the seriousness of the alleged conditions, or the

_____

[13]We acknowledge that Redding's claim may fail, at the Summary Judgment stage, if he is unable to prove his allegations.  See, Grayson v. Ross, 454 F.3d 802, 809 (8th Cir. 2006), citing Aswegen v. Henry, 49 F.3d 461, 464 (8th Cir. 1995)("To constitute an objectively serious medical need or deprivation of that need * * * the need or deprivation alleged must either be obvious to the layperson or supported by medical evidence, like a physician's diagnosis."), citing, in turn, Beyerbach v. Sears, 49 F.3d 1324, 1326-1327 (8th Cir. 1995); Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991).  However, at this stage, Redding need not provide any evidence in support of his allegations.  Moreover, even though the State Defendants challenge Redding's Eighth Amendment claims on several grounds, they have not argued that he has failed to plead an objectively serious medical need.  See, State Defendants' Memorandum in Support, Docket No. 37, at 13-20.

need for treatment on the basis of the pleadings, under [Haines v. Kerner, 404 U.S. 519 (1972)] we view the complaints as alleging serious medical needs."); see, Haines v. Kerner, supra at 520-21 ("We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")[internal quotation omitted]; cf., Jones v. Minnesota Dep't of Corrections, --- F.3d ----, 2008 WL 80576 at *4 (8th Cir. 2008)("This court has found a serious medical need that was obvious to a layperson where an inmate: * * *  had swollen and bleeding gums and complained of extreme tooth pain, see Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004), and experienced excessive urination, diarrhea, sweating, weight loss, and dehydration related to known diabetes, see Roberson v. Bradshaw, 198 F.3d 645, 647-48 (8th Cir. 1999)[.]").  Therefore, finding objectively serious medical conditions, we proceed to the second prong of the analysis, which requires that we determine whether Redding has alleged that any of the State Defendants exhibited deliberate disregard for his medical needs.  See, Grayson v. Ross, supra at 808-09.

        2)     The State Defendants Knott, Opsahl, and Pohlmann.

Construing the Complaint liberally, Redding has alleged that the State Defendants

Knott, Opsahl, and Pohlmann deprived him of his prescribed dentures, urinal, and cane, when they confiscated his personal property, in anticipation of his transfer to segregation.[14]  See, Complaint, supra at ¶¶223, 227-30.

Redding further alleges that he suffered pain in his hips, knees, and back, as well as his right foot and ankle, when he was forced to walk without his cane.  Id. at ¶228.  With respect to his dentures, Redding alleges that eating without dentures caused his gums to swell and bleed, and he contends that these symptoms lasted for approximately one (1) week.  Id. at ¶230.  With respect to his urinal, Redding alleges that he lost sleep and woke his roommates, because he had to walk back and forth to the bathrooms, several times each night.  Id. at ¶230.

"[I]ntentionally interfering with * * * treatment once prescribed" is a violation of the Eight Amendment, Estelle v. Gamble, supra at 104-05, and "[p]rison officials cannot substitute their judgment for a medical professional's opinion."  Meloy v. Bachmeier, supra at 849, citing Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  In Johnson v. Hay, 931 F.2d 456, 461 (8th Cir. 1991), our Court of Appeals found that a prisoner had stated a claim for cruel and unusual punishment

---

[14]In the alternative, Redding contends that his authorization to use a cane should have been renewed, if it had expired.  See, Complaint, supra at ¶225.

when he suffered two convulsions after a prison pharmacist deliberately refused to fill legitimate prescriptions, which had been written by prison physicians for anti-seizure medications, based upon the pharmacist's belief that the prisoner did not suffer from a seizure disorder.   See also, Easter v. Powell, 467 F.3d 459, 463-64 (5th Cir. 2006)(deliberate indifference manifested by nurse who sent prisoner with heart problems to pharmacy, and refused to provide him with cardiac medications when he found the pharmacy closed); Meloy v. Schuetzle, 230 F.3d 1363, 2000 WL 1160446 at *1 (8th Cir. 2000)[Table Disposition](prisoner stated claim for violation of Eighth Amendment when prison officials denied him access to a physician-prescribed breathing apparatus).

Here, Redding has alleged that his dentures were prescribed, and that he suffered from swollen and bleeding gums after Knott, Opsahl, and Pohlmann, confiscated them.   See, Hartsfield v. Colburn, 491 F.3d 394, 397 (8th Cir. 2007) (observing that "a number of our decisions have reversed the grant of summary judgment in favor of prison officials and prison dentists who delayed three weeks or more in providing dental care for an inmate whose mouth showed obvious signs of serious infection, such as swelling, bleeding, or pus, and who complained of severe tooth pain."), citing Moore v. Jackson, 123 F.3d 1082, 1085-87 (8th Cir. 1997), cert.

denied, 535 U.S. 1023 (2002), <u>Boyd v. Knox</u>, 47 F.3d 966, 969 (8th Cir. 1995),

<u>Patterson v. Pearson</u>, 19 F.3d 439, 440 (8th Cir. 1994), and <u>Fields v. Gander</u>, 734 F.2d

1313, 1315 (8th Cir. 1984).

Redding has also alleged that he suffered pain, when he was deprived of his

prescribed cane, due to his bone degeneration and arthritis. See, <u>Rosales v. Coughlin</u>,

10 F. Supp.2d 261, 269 (W.D.N.Y. 1998)("Courts * * * have held that a deliberate

interference with medical treatment, such as seizing a prescribed cane or other medical

equipment, can give rise to an Eighth Amendment violation[.]"), citing <u>Covington v.</u>

<u>Westchester County Jail</u>, 1997 WL 580697 (S.D.N.Y., September 18, 1997), <u>Gleash</u>

<u>v. Hardiman</u>, 1993 WL 92436 (N.D. Ill., March 26, 1993), and <u>Jones v. Fairman</u>, 1991

WL 148156 (N.D. Ill., July 25, 1991); but cf., <u>Funchess v. Doe</u>, 1997 WL 12785

(N.D. Ill., January 10, 1997)(concluding that the confiscation of prisoner's cane,

which was returned once prisoner proved medical authorization for cane, was mere

"annoyance" and did not rise to the level of a constitutional violation).

With respect to the confiscation of Redding's prescribed urinal, we note that he

has not explicitly alleged that he suffered any injury, or escalation of his condition,

as a result of walking back and forth to the bathroom, from his cell. However, "while

the emergency or nonemergency nature of a prisoner's condition may be relevant to

his claim, we note that a medical condition need not be an emergency in order to be considered serious under <u>Estelle</u>."   <u>Ellis v. Butler</u>, supra at 1003 n. 1.   We acknowledge, however, that our Court of Appeals, in an unpublished decision, affirmed the conclusion of the District Court, that a prisoner "failed to show an Eighth Amendment violation based on the seizure of his medically prescribed cotton blankets and boots."  <u>Williams v. Campbell</u>, 25 Fed.Appx. 477, 479 (8th Cir. 2001).

However, we find the decision in <u>Williams</u> to be distinguishable from the circumstances here since, in <u>Williams</u>, the District Court dismissed the inmate's Section 1983 action after an Evidentiary Hearing, and not, as here, at the pleadings stage.  <u>Id.</u> at 478.  Moreover, although the <u>Williams</u> Court provided no analysis, in affirming the District Court's dismissal, it cited to <u>Sherrer v. Stephens</u>, 50 F.3d 496 (8th Cir. 1994), in which the Court affirmed Summary Judgment in favor of the defendants, when the prisoner failed to submit "sufficient evidence that defendants ignored 'an acute or escalating situation' or that the delays adversely affected his prognosis," with respect to his broken finger.  <u>Id.</u> at 496-97.  Again, in <u>Sherrer</u>, the Court granted Judgment in favor of the prison officials, after the submission of evidence.

At this stage of the pleadings, we are unable to conclude that Redding will be unsuccessful in proving any set of facts which would show that the alleged interference with his prescribed cane, dentures, and urinal, was not deliberately indifferent to his serious medical needs. Moreover, it is plain that he has alleged an intentional interference with his prescribed medical treatment. Accordingly, we conclude that Redding has sufficiently pled an Eighth Amendment claim against Knott, Opsahl, and Pohlmann,[15] and we recommend that the State Defendants' Motion to Dismiss be denied, insofar as it relates to that claim.

3)    The State Defendant Schleis. With respect to Schleis, Redding similarly alleges that Schleis refused to return his prescribed cane, dentures, and urinal, despite several requests by both Redding and another prison official, T. Brahamm. See, Complaint, supra at ¶¶320, 322-23; see also, Plaintiff's Memorandum in Opposition, supra at p. 18 ¶2. Redding also alleges -- albeit in less than clear terms

---

[15]We acknowledge the State Defendants' contention, that Redding references the Fourteenth Amendment, rather than the Eighth, with respect to his allegations against Knott, Opsahl, and Pohlmann. See, State Defendants' Memorandum in Support, Docket No. 37, at 8, citing Complaint, Docket No. 1, at ¶220. However, Redding plainly alleges that those Defendants confiscated his "prescribed medical treatment/accommodations," see, Complaint, supra at ¶228, and alleges resulting pain, due to his medical conditions. Id. at ¶229. Accordingly, construing the Complaint liberally, we find that Redding's allegations are best analyzed within the construct of the Eighth Amendment.

-- that Schleis knew, or should have known that these items had been prescribed by Health Services.  Id. at ¶323; Plaintiff's Memorandum in Opposition, supra at p. 18 ¶2.  Accordingly, we conclude that Redding has stated a claim against Schleis for intentional interference with prescribed medical treatment, based on our analysis above, with respect to the Defendants Knott, Opsahl, and Pohlmann, and we recommend that the State Defendants' Motion to Dismiss be denied, insofar as it relates to that claim.

4)   The State Defendants Brewer, Fox, and Ryken.

Construing the Complaint liberally, Redding alleges that Brewer, Fox, and Ryken, were deliberately indifferent to his serious medical needs, when they failed to assist him, after he fell while mopping the floor.  See, Complaint, supra at ¶159.  Redding admits, however, that several other inmates helped him to his feet within fifteen (15) to twenty (20) seconds.  Id. at ¶157.  He further admits that another officer wrote him a pass to Health Services, shortly after his fall.  Id.

Accordingly, Redding has not alleged any facts to show that Brewer, Fox, or Ryken, denied him medical treatment after his fall, or delayed his access to such treatment, nor has he alleged that those Defendants interfered with his prescribed treatment.  Although Redding complains that he was directed to mop, even though he

requires a cane for mobility, he plainly alleges that Paulson ordered him to mop -- not Brewer, Fox, or Ryken. Id. at ¶153. Therefore, we conclude that Redding has failed to state a claim against Brewer, Fox, or Ryken, for deliberate indifference to his medical needs, and we recommend that the State Defendants' Motion to Dismiss be granted, insofar as it relates to these Defendants.

5)   The State Defendants Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp. Construing the Complaint liberally,  Redding alleges that Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp, violated his rights under the Eighth Amendment, when they denied him a single cell, which Redding alleges had been medically authorized by his prison physician, in order to accommodate his medical needs. See, Complaint, supra at ¶¶136, 138. Redding contends that those Defendants were deliberately indifferent to his medical needs, when they required him to move to a double cell, since he requires some privacy to care for the hygiene problems which are caused by his medical conditions. Id. at ¶142.[16]

---

[16]Redding also alleges, in less than clear terms, that those Defendants interfered with Redding's prescribed treatment -- namely, a lifting restriction which, Redding alleges, had been imposed by his physician -- when they directed Redding to pack and move his belongings to the new cell. See, Complaint, supra at ¶141.  However,
(continued...)

However, Redding admits that Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp, believed that Redding's authorization had been rescinded, when they directed him to move to a double cell.[17]  See, <u>Complaint</u>, supra at ¶¶139-41; see also, <u>State Defendants' Memorandum in Support</u>, supra at 19.  Accordingly, we conclude that Redding has not alleged a claim of deliberate indifference, because he acknowledges that those Defendants did not intend to interfere with his prescribed treatment, but instead, simply believed that the single cell was no longer prescribed. Redding has not alleged that those Defendants "actually knew of but deliberately disregarded" his prescription for a single cell.  See, <u>Dulaney v. Carnahan</u>, supra at 1239; cf. <u>Erickson v. Holloway</u>, 77 F.3d 1078, 1081 (8th Cir. 1996)("[D]isregard of

_____

[16](...continued)
Redding admits that other inmates helped him to pack his belongings.  See, <u>Gill v. Mooney</u>, 824 F.2d 192, 195 (2nd Cir. 1987)(Eighth Amendment claim properly dismissed, where prisoner alleged that correctional officer "ignored medical orders in directing [prisoner] to move his personal belongings when he was transferred from one cell to another," but "[t]hose directions were not enforced, since [prisoner] concedes that he was given assistance in moving his possessions after the doctor's order was verified.").  As a consequence, we conclude that Redding has failed to allege any unconstitutional interference with his prescribed lifting restriction.

[17]Redding alleges that a prison nurse improperly rescinded his authorization for a single cell, and then told unit staff -- namely, Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp -- to move Redding out of his single cell.  See, <u>Complaint</u>, supra at ¶141.  Redding admits that another prison nurse later corrected the "forged rescinded writing," and that he was returned to a single cell.  <u>Id.</u> at ¶142.

- 41 -

a doctor's order would show [that a prison official] intentionally interfered with prescribed treatment[.]").

Lastly, although Redding does not cite to the Americans with Disabilities Act (the "ADA"), Title 42 U.S.C. §12101 et seq., in any of his pleadings, the State Defendants address the ADA, apparently because they believe that Redding has alleged an ADA claim against Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp, based on their denial of his single cell "accommodation." See, Defendants' Memorandum in Support, supra at 18; compare, Complaint, supra at ¶¶137-38. We find no such claim in Redding's pleadings.

Although Title II of the ADA applies to State prisons, as public entities, see, Title 42 U.S.C. §12131(1); Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 209 (1998), it only "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities" of the prison. Randolph v. Rodgers, 170 F.3d 850, 857 (8th Cir. 1999), citing Title 42 U.S.C. §12131; see also, Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998). Here, Redding has not alleged that he was denied access to any "services, programs, or activities," while at MCF-RC. Instead, he complains that the State Defendants interfered with his prescribed medical treatment -- the single cell authorized by his

- 42 -

physician -- in a manner which was deliberately indifferent to his medical needs. Compare, United States v. Georgia, 546 U.S. 151, 157 (2006)("[T]he alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs [may constitute] 'exclu[sion] from participation in or ... den[ial of] the benefits of' the prison's 'services, programs, or activities.'), quoting Title 42 U.S.C. §12132; with Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005)(holding that an ADA claim cannot be based on medical treatment decisions; Iseley v. Beard, 200 Fed.Appx. 137, 142 (3rd Cir. 2006)(no ADA claim where inmate did "not claim that he was excluded from any program on the basis of his disability," but only "that he was denied medical treatment for his disabilities[.]"); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)(no ADA claim where inmate was "not complaining of being excluded from some prison service, program, or activity, for example an exercise program that his paraplegia would prevent him from taking part in without some modification of the program," but only "about incompetent treatment of his paraplegia" where prison failed to provide him with guardrails for his bed).

Here, Redding has not alleged that he was denied access to any service or program, such as Health Services. Instead, he alleges that the State Defendants

interfered with his prescribed medical treatment.   As a result, we conclude that Redding has not alleged any claim pursuant to the ADA and, in sum, we recommend that the State Defendants' Motion to Dismiss be granted, with respect to Redding's claim against Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp.

           6)    <u>The State Defendant Jones</u>.  Redding next alleges that he fell and injured himself, when his cane slipped, because the rubber tip was worn and needed replacement.  See, <u>Complaint</u>, supra at ¶132.  Construing the Complaint liberally, Redding alleges that he informed Jones of his fall and injury, but that Jones refused to help him, and also refused to permit Redding to visit Health Services, so that he could obtain a replacement tip for his cane.  <u>Id.</u> at ¶133.  Redding plainly alleges that Jones was deliberately indifferent to his medical needs when he refused to allow Redding to repair his "medically authorized cane."  <u>Id.</u> at ¶135.

For his part, Jones argues that his failure to replace the tip, if true, was mere negligence, and therefore, was not a constitutional violation.  See, <u>State Defendants' Memorandum in Support</u>, supra at 17-18.  It is true that a "prisoner must show more than negligence, more even than gross negligence, and [that] mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  <u>Jolly v. Knudsen</u>, supra at 1096, quoting <u>Estate of Rosenburg v. Crandell</u>, supra at 37; see

also, Roberson v. Bradshaw, supra at 647 ("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting Dulany v. Carnahan, supra at 1239; DeGidio v. Pung, supra at 532 ("[T]he eighth amendment does not transform medical malpractice into a constitutional claim.").

However, we conclude that Redding has alleged more than a mere failure to replace worn equipment.  Instead, Redding has alleged that Jones knew that his cane was medically authorized, knew that the tip was worn, and knew that Redding had fallen and injured himself as a result but, nonetheless, refused to allow him to visit Health Services.  Those allegations amount to a claim for intentional interference with prescribed medical treatment.[18]   Accordingly, we recommend that the State Defendants' Motion to Dismiss be denied, insofar as it relates to Redding's claim against Jones, with respect to his medical care.

---

[18]An analogous claim could be made as to a diabetic inmate, who alleges that he was prescribed insulin, but provided with a needle which was too dull to pierce his skin.  Giving an inmate a dull needle may amount to mere negligence.  However, if the inmate then informs an officer of his dilemma, and discloses that he suffers from diabetic symptoms because he is unable to administer his insulin, and the officer, nevertheless, refuses to permit the inmate to visit Health Services so as to obtain a new syringe which would allow the effective administration of his prescribed medication, we think such an allegation would constitute a claim for intentional interference with prescribed medical treatment.  We see little, in substance, to distinguish the analogy from Redding's allegations with respect to the tip on his cane.

7)    The State Defendant Johnson.   In his Complaint, Redding plainly alleges that Johnson delayed his access to medical treatment for at least two (2) months, when he sought replacement foot supports. Id. at ¶¶113-16.  He also alleges that Johnson knew of his medical conditions, and knew that Redding was suffering from pain in his back, foot, and ankle, because he was without foot supports. Id. at ¶114.  As we previously noted, Redding alleges, in the first paragraph of his Complaint, that he suffers from degenerative bone disease, arthritis, and a permanent "foot/arch injury," which require the "use of medically prescribed devices in addition to a cane." Id. at ¶1.  However, Redding has not alleged that his foot supports were prescribed, and so we decline to decide if he has stated a claim for interference with any such prescription.

Johnson argues that Redding has also failed to allege a claim based on a delay in treatment, because he has not alleged that his medical condition became aggravated as a result of any delay.  See, Defendants' Memorandum in Support, supra at 17.   It is well-settled that "[t]he objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that * * * delays adversely affected [the plaintiff's] prognosis, given the type of injury in [the] case." Dulany v. Carnahan, supra at 1243, quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir.

1997); see also, <u>Senty-Haugen v. Goodno</u>, 462 F.3d 876, 890 (8th Cir. 2006), cert.

denied, --- U.S. ----, 127 S.Ct. 2048 (2007); <u>Coleman v. Rahija</u>, supra at 785;

<u>Beyerbach v. Sears</u>, 49 F.3d 1324, 1326 (8th Cir. 1995); see also, <u>Jolly v. Badgett</u>, 144

F.3d 573, 573 (8th Cir. 1998)(Summary Judgment granted when prisoner failed to

show prison officials were aware that delay in administering medications could result

in physical harm); <u>Crowley v. Hedgepeth</u>, supra at 501 ("[W]hen the inmate alleges

that the delay in treatment is the constitutional deprivation, the objective seriousness

of the deprivation should also be measured by reference to the effect of delay in

treatment."). Here, however, at the pleadings stage, Redding is not required to prove

that his condition was aggravated -- he need only allege it. Redding claims that he

suffered from "swelling back pain foot/ankle pain" because, as a result of Johnson's

conduct, he had "been waiting weeks" for replacement foot supports. See, <u>Complaint</u>,

supra at ¶114. It is a reasonable inference, and one we make, that Redding has alleged

an aggravation of his condition, as a result of the alleged delay.

With respect to the subjective prong of the analysis, "[i]ntentional delay in

providing medical treatment shows deliberate disregard if a reasonable person would

know that the inmate requires medical attention or the actions of the officers are so

dangerous that a knowledge of the risk may be presumed." <u>Gordon ex rel. Gordon v.</u>

<u>Frank</u>, 454 F.3d 858, 862 (8th Cir. 2006); see also, <u>Olson v. Bloomberg</u>, supra at 738. "A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress, especially one who communicates this distress directly to officers." <u>Gordon ex rel. Gordon v. Frank</u>, supra at 863. Here, Redding has alleged that Johnson knew of his condition, and knew of his suffering, but intentionally delayed Redding's access to treatment. Therefore, in the context of a Motion to Dismiss, we conclude that Redding has sufficiently pled an Eighth Amendment claim against Johnson, based on a delay in medical treatment, and we recommend that the State Defendants' Motion to Dismiss be denied, with respect to Johnson.

8)      <u>The State Defendants' Qualified Immunity</u>. Jones and Johnson argue that they are entitled to qualified immunity, with respect to Redding's Eighth Amendment claims for medical treatment, although they provide no argument in support of their contention.[19]   See, <u>State Defendants' Memorandum in Support</u>, supra at 12. When qualified immunity is asserted in a Section 1983 action, we "must

---

[19]The State Defendants also contend that Anderson, Lanerd, Mielke, Parsons, Ryken, and Yozamp, are entitled to qualified immunity.  See, <u>State Defendants' Memorandum in Support</u>, supra at 12.  Since we have concluded that Redding has failed to state an Eighth Amendment claim against those Defendants, we address only whether Jones, and Johnson, are entitled to qualified immunity.

first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." <u>Jones v. Shields</u>, 207 F.3d 491, 494 (8th Cir. 2000), quoting <u>Wilson v. Layne</u>, 526 U.S. 603 (1999) [citations omitted]. "Only then do we ask whether that right was clearly established at the time of the alleged violation." <u>Id.</u>; see, <u>Coonts v. Potts</u>, 316 F.3d 745, 750 (8th Cir. 2003), citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991). Here, we have found that Redding has alleged an Eighth Amendment claim against Johnson, for delay of medical treatment, and against Jones, for intentional interference with prescribed medical treatment. Therefore, we turn to consider whether those Defendants are entitled to qualified immunity.

Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. See, <u>Wilson v. Layne</u>, supra at 609; <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002); <u>Winters v. Adams</u>, 254 F.3d 758, 766 (8th Cir. 2001).

As with all Motions to Dismiss, one predicated on qualified immunity requires that we "view[] the allegations in the complaint in the light most favorable to the plaintiff." <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997). "Because qualified immunity is an affirmative defense, it will be upheld

on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995), citing Gomez v. Toledo, 446 U.S. 635, 640 (1980), and Burlison v. United States, 627 F.2d 119, 122 (8th Cir. 1980), cert. denied, 450 U.S. 1030 (1981). At the pleadings stage, since we have concluded that Redding has alleged cognizable claims against Johnson and Jones, we next consider only whether Redding's rights were "'clearly established' at the time of the alleged violation[s]." Id., citing Munz v. Michael, 28 F.3d 795, 799 (8th Cir. 1994).

We conclude that neither Johnson, nor Jones, is entitled to qualified immunity because the Supreme Court established, as early as 1976, that a delay in medical treatment, or an intentional interference with prescribed treatment, would violate a prisoner's constitutional rights. See, Estelle v. Gamble, supra at 104-05; see also, Meloy v. Bachmeier, supra at 848; Weaver v. Clarke, supra at 1256 (Claims "of deliberate indifference to [an inmate's] existing serious medical needs * * * were first recognized by the Supreme Court almost two decades ago" in Estelle v. Gamble, and "the specific acts alleged need not have been previously held unlawful, but the unlawfulness of the acts must have been apparent in light of pre-existing law."), citing Anderson v. Creighton, 483 U.S. 635, 640 (1987). As a result, we recommend that

- 50 -

the State Defendants' Motion to Dismiss be denied, on the basis of qualified immunity, with respect to Redding's claims against Johnson, and Jones, for medical care.[20]

      c)     <u>The State Defendant Schleis</u>.   In addition to his Eighth Amendment claim, after construing his Complaint liberally, we find that Redding alleges another constitutional claim against Schleis, based on Schleis' refusal to provide Redding with a third footlocker.  See, <u>Complaint</u>, supra at ¶320.  We turn to consider whether Redding has alleged a constitutional claim, based upon a denial of access to Courts, or based upon a denial of equal protection under the law.

      1)     <u>Redding's Access-to-Courts Claim</u>. Redding admits that the DOC policy permits prisoners to have only two (2) footlockers for their personal possessions.  <u>Id.</u> at ¶321; see also, <u>Plaintiff's Memorandum in Opposition</u>, supra at pp. 16-17 ¶¶12-14.   However, he alleges that Schleis permitted other prisoners to make use of a third footlocker, when required for their legal papers.  <u>Id.</u> at ¶325.  Nevertheless, Redding also admits that only his canteen items were thrown

---

[20]Although the State Defendants have not asserted a qualified immunity defense on behalf of Knott, Opsahl, Pohlmann, and Schleis, we similarly conclude that they are not entitled to qualified immunity, on this Record, given that Redding's medical-care claims against those Defendants, as was the case with Jones, are based on an intentional interference with prescribed medical treatment.

out -- not his legal papers -- when he exceeded the two (2) footlocker limit.  Id. at

¶428.  Accordingly, we conclude that Redding has failed to allege any constitutional

claim based upon a denial of access to the Courts.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court

explicitly recognized that prisoners retain a constitutional right to meaningful access

to the Courts.  The relevant inquiry, in determining whether prison authorities have

wrongfully impinged upon that right, is "whether the prisoner has been given a

'reasonably adequate opportunity' to present his claim."  Martin v. Tyson, 845 F.2d

1451, 1456 (7th Cir. 1988), citing Bounds v. Smith, supra at 825.

However, in order to state an access to the Courts claim, Redding  must allege

some "actual injury."  See, Lewis v. Casey, 518 U.S. 343, 349 (1996); see also, White

v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007); Klinger v. Dep't of Corrections, 107

F.3d 609, 617 (8th Cir. 1997)("In Lewis v. Casey, the Supreme Court held, based on

principles of standing, that actual injury must be proven in order to prevail on an

access-to-courts claim.").  There is no "abstract, freestanding right" of access to legal

resources or legal papers and, to support the claim, Redding is obligated to show that

he has been deprived of some specific opportunity to defend himself, or to advance

a viable legal claim, in some particular action.  See, Lewis v. Casey, supra at 351;

White v. Kautzky, supra at 680; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996).  He

must also identify some specific injury that arose from that lost opportunity.  Id.  As

our Court of Appeals has observed:

> To state a claim that a law library or legal assistance
> program violates [the right of access], inmates must assert
> that they suffered an actual injury to pending or
> contemplated legal claims. [Lewis v.] Casey, 518 U.S.
> [343], 116 S.Ct. at 2180. Alleging theoretical inadequacies
> is insufficient.  Id.  Inmates must instead show, for
> example, that a complaint they prepared was dismissed due
> to a technical requirement that a library's inadequacies
> prevented them from knowing, or that a library was so
> inadequate that it prevented them from filing a claim for
> actionable harm at all.  Id.

Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996).

Here, Redding does not identify any specific instance in which he has been deprived

of the opportunity to defend himself, or to advance a viable legal claim, in some

particular action because he was denied an extra footlocker.  "To the contrary, plaintiff

was able to bring the instant case and adequately assert his claims."  Burke v. Meyers,

1998 WL 1780695 at *2 (D.N.D., July 27, 1998); see also, Hartsfield v. Nichols, ---

F.3d ----, 2008 WL 65598 at *6 (8th Cir., January 8, 2008)[emphasis in

original](Affirming dismissal of access to Courts claim because "[a]lthough [the

inmate] has alleged facts which, if true, could constitute a **wrong**, he has not * * *

articulated any manner in which he was **injured by** the offense.")[emphasis in original]; <u>Johnson v. Hamilton</u>, 452 F.3d 967, 974 (8th Cir. 2006)("[C]onclusory claims that [an inmate] was denied access to legal papers and the courts must fail * * * [where the inmate had not] even pleaded any facts that would support a finding of injury or prejudice.").

Since Redding was not deprived of his legal papers, or otherwise injured with respect to his ability to bring suit, we conclude that Redding has failed to allege a constitutional claim, with respect to his right of access to the Courts, against Schleis.

2)      <u>Redding's Equal Protection Claim</u>.  Next, as noted, Redding alleges that, despite the two (2) footlocker policy, Schleis permitted other inmates to make use of a third footlocker when they needed additional storage space for their legal papers.  See, <u>Complaint</u>, supra at ¶¶322, 324-25; see also, <u>Plaintiff's Memorandum in Opposition</u>, supra at pp. 16-17 ¶¶12, 14.  Therefore, Redding alleges that Schleis's conduct was "discriminatory" and "arbitrary" because Redding was similarly situated to those other inmates.  <u>Id.</u> at ¶¶320, 324.

"The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th

Cir. 1998)[en banc], citing Timm v. Gunter, 917 F.2d 1093, 1103 (8th Cir. 1990), cert. denied, 501 U.S. 1209 (1991); see also, Murphy v. Missouri Dep't of Corrections, 372 F.3d 979, 984 (8th Cir. 2004), cert. denied, 543 U.S. 991 (2004).  To state an Equal Protection claim, Redding would have to allege facts showing:  (1) that "he was a member of a protected class or that a fundamental right was violated," or (2) that "'similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest.'"  Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003), quoting Weiler v. Purkett, supra at 1051. He also has to allege that he was the victim of some "intentional or purposeful discrimination."  Id., citing Klinger v. Department of Corrections, 31 F.3d 727, 733 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995).

Here, Redding has not alleged that Schleis's conduct was based on his membership in any protected class -- he merely alleges that he was "similarly situated" to the prisoners who were permitted to maintain a third footlocker for their belongings.  See, Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993)("Civil rights pleadings are construed liberally," but "they must not be conclusory and must set forth facts which state a claim as a matter of law."), citing Nickens v. White, 536 F.2d 802, 803 (8th Cir. 1976); compare, Williams v. Manternach, 192 F. Supp.2d 980, 991, 992

(N.D. Iowa 2002)("In addition to such admittedly conclusory allegations of discriminatory intent, however, Williams pleads sufficient facts from which discriminatory intent can be inferred[.]"); with Peck v. Hoff, 660 F.2d 371, 373 (8th Cir. 1981)(Affirming dismissal, under Rule 12(b)(6), where the inmate's "complaint, closely scrutinized but liberally construed, fails to allege that he or a class to which he belongs received treatment from the prison classification board which was invidiously dissimilar to that received by other inmates."), citing Burns v. Swenson, 430 F.2d 771, 778 (8th Cir. 1970), cert. denied, 404 U.S. 1062 (1972).

Nevertheless, Redding has alleged that he was similarly situated to inmates who received third footlockers, and that Schleis's conduct was both discriminatory and arbitrary. See, Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992)("[I]f the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis."). As a result, we conclude that Redding has alleged an Equal Protection claim against Schleis, and we recommend that the State Defendants' Motion to Dismiss be denied, insofar as it relates to Redding's Equal Protection claim against Schleis.

        d)    The State Defendant Jones. Redding next alleges that Jones sexually harassed him, in violation of the Eighth Amendment's prohibition on cruel

and unusual punishment, and in violation of the MHRA.  We address each contention

in turn.[21]

        1)      <u>Redding's Eighth Amendment Claim</u>.  "[P]risoners can state

a cause of action for sexual harassment under 42 U.S.C. §1983 * * * because the

sexual harassment or abuse of an inmate by a corrections officer can never serve a

---

[21]In addition to contesting Redding's Eighth Amendment claim against Jones, the State Defendants also argue that Jones's conduct did not violate Redding's Substantive Due Process rights, under the Fourteenth Amendment.  See, <u>State Defendants' Memorandum in Support</u>, supra at 21; see also, <u>Complaint</u>, supra at ¶123 (citing Fourteenth Amendment).  We agree.  "'To establish a substantive due process claim, [a plaintiff] must show that the government action was truly irrational, that is, something more than * * * arbitrary, capricious, or in violation of state law.'" <u>Graning v. Sherburne County</u>, 172 F.3d 611, 617 (8th Cir. 1999), quoting <u>Anderson v. Douglas County</u>, 4 F.3d 574, 577 (8th Cir. 1993), cert. denied, 510 U.S. 1113 (1994).  The government action in question must shock the conscience or be otherwise offensive to notions of fairness and human dignity.  See, <u>Moran v. Clarke</u>, 296 F.3d 638, 647 (8th Cir. 2002); <u>Weiler v. Purkett</u>, 137 F.3d 1047, 1051 (8th Cir. 1998).  A substantive due process claim may also be presented when the State acts in a manner which "infringes 'fundamental' liberty interests, without narrowly tailoring that interference to serve a compelling state interest."  <u>Weiler v. Purkett</u>, supra at 1051, citing <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993).

Here, although Redding cites the Fourteenth Amendment, it is not entirely clear what Redding alleges as forming the basis of his Substantive Due Process claim, particularly since his allegations of sexual harassment are best analyzed within the construct of the Eighth Amendment.  Nevertheless, because we conclude that Jones' alleged conduct does not constitute cruel and unusual punishment, we similarly conclude that his conduct does not "shock the conscience."  Accordingly, we conclude that Redding has failed to allege a constitutional claim, pursuant to the Fourteenth Amendment, against Jones.

legitimate penological purpose and may well result in severe physical and psychological harm."   Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). Accordingly, "such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain [which is] forbidden by the Eighth Amendment." Id. [internal quotation omitted], citing, in part, Whitley v. Albers, 475 U.S. 312, 319 (1986).  Nevertheless, "[t]o prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Id., citing Hudson v. McMillian, 503 U.S. 1, 8 (1992).

Here, Redding has alleged that Jones made several inappropriate sexual comments to him which, if true, reveal conduct that is both unprofessional and distasteful.  However, this type of verbal conduct, including "sexual comments and gestures," but "absent contact or touching, does not constitute unnecessary and wanton infliction of pain." Howard v. Everett, 208 F.3d 218, 2000 WL 268493 at *1 (8th Cir. 2000)[Table Disposition]; see also, Gillespie v. Smith, 2007 WL 2002724 at *1, *3 (N.D. Iowa, July 3, 2007)(dismissing a prisoner's sexual harassment claim, despite allegations that a prison official "would proposition me, he bribed me to talk

sexual to him, he would tell me sexual things about himself," and "[h]e manipulated his position of authority to get me to write him sexual letters," because "the court is unable to say as an objective matter that using sexually explicit language when conversing with the plaintiff caused 'pain.'"); cf., <u>Williams v. Prudden</u>, 67 Fed.Appx. 976, 977 (8th Cir. 2003)(inmate "sufficiently state[d] an Eighth Amendment claim by alleging that [prison guard] forcibly ground his pelvis against her, grabbed her breast, verbally demanded sexual favors, made physical sexual advances, and attempted to force himself upon her.").

Given the absence of any allegation, that Jones engaged in something other than transient verbal sexual harassment, we conclude that Redding's allegations do not rise to the level of a cognizable constitutional claim, and we recommend that the State Defendants' Motion to Dismiss be granted in that respect.[22]

---

[22]Moreover, even though Redding alleges that he was "upset[,] angry and frustrated," by Jones's conduct, see, <u>Complaint</u>, supra at ¶128, he has not alleged any physical injury, as a result of the alleged harassment.  See, <u>Title 42 U.S.C. §1997e(e)</u> ("No Federal civil action may be brought by a prisoner * * * for mental or emotional injury suffered while in custody without a prior showing of physical injury."); <u>Royal v. Kautzky</u>, 375 F.3d 720, 723 (8th Cir. 2004), cert. denied, 544 U.S. 1061 (2005)("[W]e read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners.").  Thus, in the event that the District Court concludes Redding has alleged an Eighth Amendment claim based on sexual harassment, then, alternatively, we recommend that Redding's constitutional claim

(continued...)

2)      The Plaintiff's MHRA Claim.  The MHRA prohibits public

services, such as the DOC, from engaging in sexual harassment.  See, <u>Minnesota</u>

<u>Statutes Sections 363A.03, Subdivisions 13, 35</u>, <u>363A.12, Subdivision 1</u>.  However,

"[a] claim of an unfair discriminatory practice must be brought as a civil action, * *

* filed in a charge with a local commission * * * , or filed in a charge with the

commissioner within one year after the occurrence of the practice."  <u>Minnesota</u>

<u>Statutes Section 363A.28, Subdivision 3</u>.

        As noted, Redding alleges that Jones subjected him to sexual harassment during

May and June of 2003 -- more than one (1) year before he filed his Complaint on

November 21, 2006.  See, <u>Docket No. 1</u>.  However, "[t]he running of the one-year

limitation period is suspended during the time a potential charging party and

respondent are voluntarily engaged in a dispute resolution process."  Since the Record

neither proves, nor disproves, that the parties engaged in any alternative dispute

resolution, we cannot determine whether the statute of limitations has expired.

---

[22](...continued)

against Jones be dismissed, except insofar as he seeks nominal damages, punitive
damages, and injunctive and declaratory relief, rather than other monetary damages.
See, <u>Royal v. Kautzky</u>, supra at 723 ("Congress did not intend section 1997e(e) to bar
recovery for all forms of relief.")(collecting cases).

Therefore, we recommend that the State Defendants' Motion to Dismiss be denied on that basis.[23]

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Redding's claims against the Defendant Joanne Paulson be dismissed, for failure to effect service of process, but without prejudice.

2.      That the Motion of the CMS Defendants to Dismiss [Docket No. 30] be GRANTED, but without prejudice.

3.      That the Motion of the State Defendants to Dismiss [Docket No. 36] be GRANTED in part, except for the following claims, which should be allowed to proceed:

a)      Redding's Eighth Amendment claims against Jones, Knott, Opsahl, Pohlmann, and Schleis, for intentional interference with prescribed medical treatment.

b)      Redding's MHRA claim against Jones for sexual harassment.

c)      Redding's Eighth Amendment claim against Johnson for delay of medical treatment.

---

[23]Moreover, while the State Defendants allege, in their Memorandum, that Redding never filed a claim with the Minnesota Department of Human Rights, we have no evidence in the Record to support their assertion.

       d)      Redding's Fourteenth Amendment claim against Schleis, for denial of equal protection under the law.


Dated:  February 15, 2008           s/Raymond L. Erickson
                                   Raymond L. Erickson
                                   CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 3, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 3, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.